*Attorney Grievance Commission v. John Xander Yi*
Misc. Docket AG No. 21, September Term 2019

**Attorney Discipline – Competence, Diligence and Communication with Client – Mishandling of Client Funds – Misrepresentation to Bar Counsel – Disbarment**. Disbarment is the appropriate sanction in a case in which a relatively new attorney without significant criminal law experience agreed to represent an immigrant charged with very serious drug offenses that not only could have resulted in imprisonment but also have affected her immigration status, failed to communicate adequately with the client, failed to diligently analyze the discovery provided by the prosecution and prepare adequately the defense of the charges, mishandled the client's fee payment and mismanaged his firm's attorney trust account, and made misrepresentations and otherwise failed to adequately respond to Bar Counsel's requests for information.

Maryland Attorneys' Rules of Professional Conduct 19-301.1, 19-301.2(a), 19-301.3, 19-301.4, 19-301.5(a)-(b), 19-301.16(d), 19-308.1, 19-308(a),(c),(d) & 19-308.5.

Circuit Court for Montgomery County
Case No. 471899-V
Argument: June 10, 2020

<u>IN THE COURT OF APPEALS</u>
<u>OF MARYLAND</u>

Misc. Docket AG No. 21

September Term, 2019

_____

ATTORNEY GRIEVANCE COMMISSION
OF MARYLAND

v.

JOHN XANDER YI

_____

Barbera, C.J.,
McDonald
Watts
Hotten
Getty
Booth
Biran,

JJ.

_____

Opinion by McDonald, J.

_____

Filed:  August 21, 2020

The regulation of attorneys through the attorney disciplinary process is not so much a matter of crime and punishment as one of consumer protection. A law license authorizes an attorney to advise, or advocate on behalf of, another person at the most critical junctures of life. A minimal level of competence, diligence, and forthrightness is not just an ideal but essential to the task of serving those who seek the lawyer's assistance.

At the time of the events that resulted in this case, Respondent John Xander Yi was an aspiring immigration lawyer with less than three years' experience. He was licensed in Maryland but worked out of a Virginia office of a firm he had established with a Virginia lawyer who had been a high school and law school classmate. A recent immigrant caught up in a drug importation scheme sought his help to defend her against serious criminal charges with potentially devastating consequences not only to her liberty but also to her ability to remain in the United States. Mr. Yi, who had never tried a criminal case, much less represented a party in a circuit court, took the case.

Mr. Yi failed to adequately prepare a defense and ultimately pressured the client, against her better judgment, to plead guilty. The representation was replete with elementary errors, such as failing to review the State's discovery with the client, not fully advising her of the plea deal offered by the State, and failing to refund a substantial portion of the prepaid fee that was clearly owed to the client under his own retainer agreement.

Prior to her sentencing, the client terminated Mr. Yi's representation. The Circuit Court allowed the client to withdraw her guilty plea in light of what the court believed might be a successful postconviction challenge to the conviction. The client, now represented by the Public Defender, went to trial and was acquitted.

A complaint by the client and an investigation by Bar Counsel ensued.  Mr. Yi compounded his difficulties by giving partial, incomplete, and false responses to Bar Counsel's inquiries.  He ultimately admitted that his representation of the client was inadequate and that his attorney trust account had been mismanaged.

The serious nature of the violations in this case does not portend well for those who might seek Mr. Yi's legal services in the future.  While we take no pleasure in shutting down the career of a nascent attorney, our duty to protect the public requires a sanction of disbarment.

# I

# Background

## A.    *Procedural Context*

On August 19, 2019, the Attorney Grievance Commission, through Bar Counsel, filed with this Court a petition for disciplinary or remedial action against Mr. Yi, alleging that he had violated numerous provisions of the Maryland Attorneys' Rules of Professional Conduct ("MARPC") in his representation of a particular client.[1]  In particular, Bar Counsel alleged that Mr. Yi had violated Rule 1.1 (competence); Rule 1.2(a) (scope of representation); Rule 1.3 (diligence); Rule 1.4 (communication); Rule 1.5(a) & (b) (fees);

---

[1] The MARPC are codified as Maryland Rule 19-300.1 *et seq*.  For readability, we will use shortened references – *i.e*., Maryland Rule 19-301.1 will be referred to as Rule 1.1 – that will allow easier cross-references to prior codifications of these rules, as well as to similar rules in other jurisdictions and the ABA model rules on which they are based.  *See* American Bar Association, *ABA Compendium of Professional Responsibility Rules and Standards* (2017).

Rule 1.16(d) (terminating representation); Rule 5.5(a) (unauthorized practice of law); Rule 8.1 (disciplinary matters); and Rule 8.4 (a), (c), & (d) (misconduct). Bar Counsel also alleged, pursuant to Rule 8.5, the choice of law provision of the MARPC, that Mr. Yi had violated Rule 1.15(b) & (c) of the Virginia Rules of Professional Conduct, concerning the safekeeping of client property.

Pursuant to Maryland Rule 19-722(a), we designated Judge Joan E. Ryon of the Circuit Court for Montgomery County to conduct a hearing concerning the alleged violations and to provide findings of fact and conclusions of law. On January 13 and 14, 2020, Judge Ryon conducted an evidentiary hearing. At the hearing, several witnesses, including Mr. Yi, his law partner, and his former client, testified and various documentary exhibits were received in evidence. After the hearing, Bar Counsel chose not to pursue the alleged violation of Rule 5.5(a). On February 28, 2020, Judge Ryon issued an opinion containing her findings of fact and concluding that Mr. Yi had committed all of the other alleged violations.

Mr. Yi filed exceptions to a number of the hearing judge's findings of fact and contested all of the hearing judge's conclusions of law. On June 10, 2020, we heard oral argument concerning those exceptions and the parties' recommendations as to an appropriate sanction.

**B.**     *Facts*

When no exception is made to a hearing judge's finding of fact, we accept it as established. Maryland Rule 19-741(b)(2)(A). When a party excepts to a finding, we must determine whether the finding is established by the requisite standard of proof – in the case

of an allegation of misconduct, clear and convincing evidence.   Maryland Rules 19-741(b)(2)(B), 19-727(c).   We summarize below the hearing judge's findings of fact and other undisputed matters in the record, as they relate to the alleged violations.   We address Mr. Yi's exceptions in relation to the findings to which they pertain.

      1.     Mr. Yi's Law Practice

Mr. Yi grew up in Virginia.   He and a high school friend, Juan Gutierrez, both attended Sandra Day O'Connor College of Law at Arizona State University in Phoenix, Arizona.   They graduated in May 2013 and set out to execute a plan to become members of the bar, in Maryland and Virginia respectively, and practice law together.   Consistent with that plan, Mr. Yi obtained admission to the Maryland Bar in 2013 and Mr. Gutierrez was admitted to the Virginia Bar.   Mr. Yi is not currently, nor has he ever been, a member of the Virginia Bar.

In March 2014, Mr. Yi and Mr. Gutierrez opened the Law Offices of Gutierrez Yi, LLP in Alexandria, Virginia.   During the period of time pertinent to this case, Mr. Yi maintained his office for the practice of law at this location in Virginia.   The firm's practice, and Mr. Yi's in particular, is focused primarily on representing clients in immigration matters.[2]   In connection with its immigration practice, the firm employs staff who are bilingual in English and Spanish.   Mr. Gutierrez is also fluent in Spanish; Mr. Yi does not

---

[2] Mr. Yi testified that immigration matters comprise at least 70 percent of the firm's practice and about 90 percent of his own practice.

speak Spanish.  In addition to immigration matters, they also handle some family, criminal, and traffic matters.

As of July 2016, Mr. Yi had limited criminal law experience.  He had represented approximately seven clients in criminal cases in the District Court, but had never tried a case or represented a client in a circuit court case.

2.    Mr. Yi's Representation of Sirlis Portillo de Espinoza

*The Client*

Sirlis Portillo de Espinoza immigrated to the United States from Guatemala in 2015.  She lives in Beltsville, Maryland.  Her native language is Spanish.  She has limited English comprehension and is unable to read or write English.  The highest level of education that Ms. Portillo de Espinoza has completed is high school in Guatemala.  She has been married for 23 years and has five children who all live in the United States.

*The Client's Arrest on Drug Charges*

On July 19, 2016, Ms. Portillo de Espinoza was arrested after allegedly taking possession of a package containing cocaine.  A statement of charges was filed charging her with one count of importing a controlled dangerous substance and one count of unlawful possession of a controlled dangerous substance.  After her initial appearance that day in the District Court of Maryland, sitting in Montgomery County, she was released on her own recognizance.

*The Client Retains Mr. Yi*

Ms. Portillo de Espinoza's husband scheduled an appointment for her with Mr. Yi shortly after she was released.  Ms. Portillo de Espinoza met with Mr. Yi at his office in

Virginia on July 20, and again on July 25.  During these meetings, Mr. Yi discussed the arrest and the charging documents with Ms. Portillo de Espinoza.  A bilingual office assistant interpreted the conversations.  Ms. Portillo de Espinoza explained that drug dealers in Guatemala, who had harmed her when she lived there, had threatened her and her family and forced her to pick up the package containing cocaine.  Mr. Yi agreed to represent Ms. Portillo de Espinoza for a flat fee of $8,000.

*The Client Pays the Fee and Signs a Retainer Agreement*

Ms. Portillo de Espinoza returned to Mr. Yi's office on July 26 to pay the retainer, but Mr. Yi was not present.  His law partner, Mr. Gutierrez, accepted $8,000 in cash from Ms. Portillo de Espinoza on behalf of the firm.  The funds were deposited in the firm's attorney trust account, maintained in a Virginia bank.

An office assistant then presented Ms. Portillo de Espinoza with a five-page retainer agreement in English.  The office assistant orally summarized it in Spanish, but did not provide a written version of the agreement in Spanish.

The retainer agreement stated that the total legal fee was $8,000, but that Ms. Portillo de Espinoza would be refunded a portion of that amount if she ultimately entered into a plea agreement.[3]  If a plea agreement were reached before trial preparation began –

---

[3] The retainer agreement provided in relevant part:

4. LEGAL FEES AND EXPENSES.  In consideration of the professional services rendered and to be rendered, the client agrees to pay a total fee of $8,000 **as legal fee**.  Client and Attorney understand that if a plea agreement is reached before preparation for trial then a total fee of only $5,000.00 will be earned by Attorney, and Client will be reimbursed a total of $3,000.00. Preparation for trial will be defined as a period of 2 weeks before a trial

defined as two weeks before trial – she would receive a $3,000 refund.  If a plea agreement

were reached after that date, the refund would be $1,500.  The retainer agreement provided

that the client was separately responsible for other fees, such as those related to translations

and experts.

According to Ms. Portillo de Espinoza, she did not ask questions about the terms of

the retainer agreement because the office assistant's demeanor made her uncomfortable,

but signed it anyway because she was eager to retain counsel.  At the hearing, Ms. Portillo

de Espinoza testified that "what I wanted was for someone to defend me.  I was scared."

The hearing judge found that Mr. Yi did not ensure that the agreement had been properly

explained to her, as he was not present when Ms. Portillo de Espinoza received the retainer

agreement.[4]

Sometime later that month, after Ms. Portillo de Espinoza had paid the retainer and

signed the retainer agreement, she met with Mr. Yi to discuss the events leading up to her

---

      heating.  Client understands that if Client decides to accept a plea deal once
      preparation for trial has commences, which is 2 weeks before trial, then a
      total fee of $6,500.00 is due, and Client will be reimbursed by attorney
      $1,500.00.

(emphasis and typographical errors in original).

  [4] Mr. Yi excepts to this finding, noting that his firm had a number of bilingual
employees to ensure that Spanish speaking clients like Ms. Portillo de Espinoza would be
properly advised of documents, such as retainer agreements.  He does not explain why the
firm did not take the simple step of providing a retainer agreement form in both Spanish
and English.  In any event, there appears to be no dispute that he himself never reviewed
the agreement in any fashion with the client.  It was the hearing judge's prerogative to
credit Ms. Portillo de Espinoza's uncontroverted testimony.  *Attorney Grievance Comm'n
v. Page*, 430 Md. 602, 627 (2013).

arrest.  At this meeting, Ms. Portillo de Espinoza provided Mr. Yi with two letters that she had received from Guatemala.  The letters were written in Spanish and Ms. Portillo de Espinoza told Mr. Yi that they contained the threats that led her to pick up the package containing cocaine.

*The Client is Indicted and Mr. Yi Appears in the Case*

On September 8, 2016, the grand jury in the Circuit Court indicted Ms. Portillo de Espinoza on one count of importing a controlled dangerous substance into the state, one count of possession with intent to distribute a controlled dangerous substance, and one count of possession of a controlled dangerous substance.

Mr. Yi entered his appearance in the Circuit Court on September 29, 2016.[5]  The Circuit Court scheduled a pretrial hearing for November 10, a motions hearing for November 18, and set the trial date for December 13.

The rules governing criminal cases direct a defendant to file certain "mandatory motions" – *i.e.*, motions alleging defects in the prosecution, defects in the charging document, or that the State had used unlawful means to obtain evidence – early in the case. A defendant who fails to file such motions within a 30-day period is ordinarily deemed to have waived those issues.  Maryland Rule 4-252.  Mr. Yi did not file any such motions in the case concerning Ms. Portillo de Espinoza.  During his testimony at the hearing of this

---

[5] He had previously entered his appearance in August in the District Court prior to the indictment.

case, Mr. Yi conceded that he "probably should have" filed some motions, such as a motion to suppress evidence obtained from her cell phone, at least to preserve the issue.

*The Scheduling Conference and Pretrial Discovery*

On September 30, 2016, Mr. Yi and Ms. Portillo de Espinoza attended a scheduling conference in the Circuit Court. Mr. Yi arranged for Mr. Gutierrez's sister, who was fluent in Spanish and worked as an independent contractor providing interpretation services for the firm, to join them at the Circuit Court. Mr. Yi did not inform Ms. Portillo de Espinoza at that time that the interpreter was his law partner's sister or that there would be a fee for her services.[6]

A few days after the scheduling conference, on October 3, 2016, the Assistant State's Attorney prosecuting the case notified Mr. Yi that discovery materials were available for Mr. Yi to download. These discovery materials included police investigative reports, a surveillance video, and various other documents. Later in the month, the prosecutor provided written notice that the State would call three expert witnesses at trial – a forensic chemist, a police officer who was an expert in computer and electronic forensic

---

[6] The hearing judge concluded that the $80 fee charged by Mr. Gutierrez's sister for this service was unreasonable because the Circuit Court had interpreters available at no cost. Mr. Yi excepts to the hearing judge's finding. According to Mr. Yi, he wanted a trustworthy interpreter that would allow him to communicate with Ms. Portillo de Espinoza at the courthouse without having to depend on the availability of a court-provided interpreter. It is evident from the record of this case that court-appointed interpreters are not always available when needed, even for court proceedings. It was not unreasonable for Mr. Yi to arrange for an interpreter to be available for him to be able to communicate when necessary with his client. In addition, the retainer agreement anticipated that interpretation or translation services might be required and entail fees. This exception is sustained.

examinations, and a police officer who was an expert on the subject of illegal drug distribution.

Among the discovery materials provided by the State were text messages in Spanish that had been recovered from Ms. Portillo de Espinoza's cell phone. The discovery materials did not include English translations of those messages. At Mr. Yi's request, Mr. Gutierrez's sister translated these text messages, as well as the letters that Ms. Portillo de Espinoza had provided previously, from Spanish to English. Mr. Gutierrez's sister told Ms. Portillo de Espinoza that she would charge $500 for her translation services. She completed the translations on or about October 20, 2016. (Several months later, in February 2017, Mr. Yi disbursed $500 from his attorney trust account to pay the sister for the translations).[7] The texts and letters contained profane threats against Ms. Portillo de Espinoza, apparently by the drug dealer who had sent the package that she had picked up. Other translated text messages consisted of apparently friendly conversations between Ms. Portillo de Espinoza and other parties. The hearing judge found that there was no indication

---

[7] The hearing judge found that the translation of the Spanish text messages from the client's cell phone was unnecessary and that the fees for doing so were therefore unreasonable because the State later provided Mr. Yi with an English translation of the text messages. Mr. Yi excepts to this finding. At the hearing, he testified that the State did not tell him that it would be sending him translated versions of the text messages, that he needed to know their content for his meetings with Ms. Portillo de Espinoza, and that, in any event, the State did not provide the translations until November 3, a week before the guilty plea proceeding. While Mr. Yi could have anticipated that the State would eventually provide him with an English translation if it planned to present the text messages to an English-speaking jury at trial, it was not unreasonable to obtain a trusted translation sooner not only to prepare the defense, but also to determine whether the State's translation was open to dispute. This exception is sustained.

of any attempt by Mr. Yi to investigate the threats for use in the defense of Ms. Portillo de Espinoza.

The Assistant State's Attorney also requested discovery from the defense.  Mr. Yi failed to respond to those discovery requests.  He did not make any discovery requests on behalf of Ms. Portillo de Espinoza.

*Meeting with the Client in Anticipation of the Pretrial Hearing*

In or about late October or early November 2016, Ms. Portillo de Espinoza met with Mr. Yi at his office in Virginia.  Mr. Gutierrez interpreted for them.  Before the hearing judge, Ms. Portillo de Espinoza and Mr. Yi related starkly different accounts of that meeting.

According to Ms. Portillo de Espinoza, Mr. Yi told her that no one would believe that she had been threatened by drug dealers.  Ms. Portillo de Espinoza testified that Mr. Yi told her that the State had a considerable amount of evidence against her, but that he "didn't explain anything, anything at all" concerning that evidence.  Specifically, she said that Mr. Yi did not review with her any of the police reports, the chemical analysis, or a surveillance video and did not inform her of the information concerning the State's witnesses that he had received.  She said that Mr. Yi had not told her that the defense could challenge the constitutionality of the State's seizure of evidence.[8]

---

[8] Mr. Gutierrez, who interpreted at the meeting, also testified that he did not recall any discussion about motions to suppress evidence.

According to Ms. Portillo de Espinoza, Mr. Yi concluded that she had three options: (1) move to another state, (2) return to Guatemala, or (3) plead guilty. She testified that Mr. Yi advised her that, if she were to plead guilty, the court might sentence her to "probation, community service, or maybe less time in prison." She said that Mr. Yi did not advise her of the potential immigration consequences of a guilty plea.

Mr. Yi provided a very different account of the meeting. He testified that Ms. Portillo de Espinoza admitted to him that she had agreed to pick up the package containing drugs, not because she had been threatened, but because she wanted the money. He said that he believed Ms. Portillo de Espinoza would commit perjury if she went to trial and that he felt that he could no longer ethically represent her at a trial. He denied that he had ever advised Ms. Portillo de Espinoza to flee the state or the country. Instead, Mr. Yi said, he had advised her that she could either plead guilty or allow him to withdraw from the case. Mr. Yi also insisted that he had advised Ms. Portillo de Espinoza of the potential immigration consequences of a guilty plea.[9]

The hearing judge found Ms. Portillo de Espinoza's account of the meeting to be more credible than Mr. Yi's and gave several reasons for that conclusion.[10] First, the letters

---

[9] Mr. Gutierrez, who acted as interpreter, testified that the meeting became "a little tense" and that Mr. Yi accused Ms. Portillo de Espinoza of lying. In other respects, he neither corroborated the details of Mr. Yi's version of the meeting nor disputed much of Ms. Portillo de Espinoza's version.

[10] Mr. Yi excepts to the hearing judge's finding that he failed to explain the evidence received in discovery "in any manner" to Ms. Portillo de Espinoza and generally to the hearing judge's determination that her version of their meeting was more credible than his version. As indicated earlier, it is the role of the hearing judge to assess credibility. *See* footnote 4, above. She was entitled to credit the testimony of Ms. Portillo de Espinoza

and text messages corroborated Ms. Portillo de Espinoza's explanation of her actions, as they established that she was, in fact, receiving violent threats directed at her and her family.  Second, the hearing judge alluded to Ms. Portillo de Espinoza's demeanor – that she became visibly upset when asked about the threatening messages during direct examination and was adamant that she was telling the truth.  Third, Mr. Yi conceded that there was no evidence (other than his own testimony) that indicated that Ms. Portillo de Espinoza was going to receive compensation in exchange for picking up the package containing drugs.

### *Mr. Yi Fails to Follow Up with the Client's Therapist*

In September 2016, Ms. Portillo de Espinoza had begun seeing Margaret M. Gruenke, a bilingual clinical social worker licensed in several states, including Maryland. Ms. Gruenke provides therapeutic services for individuals suffering from various forms of trauma.  Ms. Portillo de Espinoza met with Ms. Gruenke weekly for treatment, which Ms. Gruenke provided on a pro bono basis.

In early October 2016, Ms. Portillo de Espinoza authorized Mr. Yi to discuss her case with Ms. Gruenke.  On October 6, Mr. Yi asked Ms. Gruenke to prepare a psychological evaluation of Ms. Portillo de Espinoza.  That same day, Ms. Gruenke emailed her evaluation of Ms. Portillo de Espinoza to Mr. Yi.  Mr. Yi did not respond to

---

over the testimony of Mr. Yi for the reasons outlined in her opinion.  These exceptions are overruled.

Ms. Gruenke's email.  Nor did he seek additional information from Ms. Gruenke about her evaluation and Ms. Portillo de Espinoza's mental health.

For her part, Ms. Gruenke attempted to follow up with Mr. Yi on several occasions, but he never answered her calls or responded to her messages.  On November 4, Ms. Gruenke sent Mr. Yi an email, in which she stated that she wanted to discuss the upcoming pretrial hearing scheduled for November 10 and explained that Ms. Portillo de Espinoza was "highly distressed."  She mentioned that she had left multiple messages for him and asked him to respond.  The date of the pretrial hearing drew closer, but Mr. Yi did not respond to that email.

On November 9, the day before the guilty plea proceeding, Ms. Portillo de Espinoza happened to be in a therapy session with Ms. Gruenke when Mr. Yi called his client.  Ms. Portillo de Espinoza gave her phone to Ms. Gruenke.  Ms. Gruenke asked Mr. Yi why he had not returned her calls regarding Ms. Portillo de Espinoza's evaluation.  He told her that he could not speak to her unless he received a written authorization from Ms. Portillo de Espinoza and a letter of retention from Ms. Gruenke – despite the fact that his client had previously given him oral authorization to discuss the case with the therapist and he had asked the therapist to prepare the evaluation.  It was evident that Mr. Yi had made no effort before this call to obtain the written authorization or letter of retention that he said he needed in order to speak with Ms. Gruenke.

After speaking with Ms. Gruenke by phone on November 9, Mr. Yi replied to her November 4 email that same day.  He apologized and said that he had not previously seen the email.  He reiterated that he could not discuss Ms. Portillo de Espinoza's case with her

14

unless he received "a formal letter of retention" from Ms. Gruenke.  Later that same day,
Mr. Yi sent Ms. Gruenke another email.  He stated that, although he had originally reached
out to Ms. Gruenke to gather background as to potential defenses, with the possibility of
her providing expert testimony at trial, he felt that those defenses were no longer available
after reviewing the State's evidence.  Ms. Gruenke had no further contact with Mr. Yi after
November 9, 2016.

        The hearing judge found that Ms. Gruenke was eager to assist Mr. Yi with his
representation of Ms. Portillo de Espinoza, but that Mr. Yi did not explore or follow up
with Ms. Gruenke.

        *The Client Pleads Guilty on Mr. Yi's Advice*

        In the days leading up to the guilty plea proceeding on November 10, 2016, Ms.
Portillo de Espinoza had expressed serious reservations about pleading guilty.  However,
she testified that, based on Mr. Yi's previous advice, she ultimately believed that her only
option was to plead guilty.

        According to Mr. Yi, at some point prior to the November 10 proceeding, the State
had made a verbal plea offer in which it would recommend no jail time for Ms. Portillo de
Espinoza pending a presentence investigation report.  The hearing judge found, however,
that Mr. Yi failed to advise Ms. Portillo de Espinoza of this offer or to inform the Circuit
Court of the existence of the plea offer.[11]

_____

        [11] The testimony in the record concerning their discussions of a plea offer by the
State is somewhat inconsistent.  Mr. Yi testified that that he had advised Ms. Portillo de
Espinoza of a plea offer by the State, although that testimony is somewhat vague as to the
details that he provided her.  At certain points in her testimony, Ms. Portillo de Espinoza

On November 10, 2016, Mr. Yi met Ms. Portillo de Espinoza at the Circuit Court, where she pled guilty to possession with intent to distribute a controlled dangerous substance under count two of the indictment.  The court scheduled Ms. Portillo de Espinoza's sentencing hearing for December 22, 2016.

*The Client Terminates Mr. Yi's Representation*

After the guilty plea hearing, Ms. Portillo de Espinoza was advised by other people that Mr. Yi had not properly represented her.  Ms. Portillo de Espinoza decided to terminate Mr. Yi's representation, which she communicated in a letter dated December 16, 2016. Mr. Yi filed a motion to withdraw his appearance a few days later, which the Circuit Court granted on January 6, 2017.  Mr. Yi had no further contact with Ms. Portillo de Espinoza following his withdrawal from the case.

Under the terms of the retainer agreement, Mr. Yi owed Ms. Portillo de Espinoza a refund of $3,000 because she had pled guilty more than two weeks before the December 22, 2016 trial date.  According to Mr. Yi, his office assistant attempted to call Ms. Portillo de Espinoza about the refund, but was unable to reach her.  The hearing judge concluded that Mr. Yi's testimony on this subject was not credible, as he was unable to provide any details or corroboration of the alleged effort to provide Ms. Portillo de Espinoza with her refund.

---

seemed to acknowledge that Mr. Yi had told her that a plea offer existed, but was not herself aware of the details.  It appears evident that she was not fully advised of a plea offer.  In any event, it is undisputed that no plea agreement was placed on the record at the guilty plea proceeding.

16

*The Client Obtains New Counsel, Withdraws the Guilty Plea, and is Acquitted*

After she terminated Mr. Yi's representation, Ms. Portillo de Espinoza was represented by an Assistant Public Defender. On February 22, 2017, the Assistant Public Defender filed a motion to withdraw Ms. Portillo de Espinoza's guilty plea. The State opposed that motion.

On March 8, 2017, the Circuit Court held a hearing on the motion, at which Ms. Portillo de Espinoza and Ms. Gruenke testified. Mr. Yi was not called as a witness. The Circuit Court observed that "this has postconviction issues written all over it" and, at the conclusion of the hearing, the Circuit Court granted the motion, stating that it was not "convinced that the plea was freely and voluntarily entered." The court cited the lack of communication between Ms. Portillo de Espinoza and Mr. Yi, as well as Mr. Yi's failure to follow up on Ms. Gruenke's evaluation. The case was scheduled for a trial.

At Ms. Portillo de Espinoza's jury trial in November 2017, the jury found her not guilty on all counts.

3.    Bar Counsel's Investigation

On February 20, 2018, Ms. Portillo de Espinoza filed a complaint with Bar Counsel about her experience with Mr. Yi.[12] On February 27, Bar Counsel forwarded the complaint to Mr. Yi and requested a written response no later than March 20.

---

[12] Ms. Gruenke had also previously filed a complaint with Bar Counsel concerning Mr. Yi's performance in the case following Ms. Portillo de Espinoza's acquittal.

*Mr. Yi's Initial Response to Bar Counsel*

In a letter dated March 1, 2018, Mr. Yi provided his response to Bar Counsel. In that letter, he stated in part:

> Upon examination of the discovery evidence and during questioning of Mrs. De-Espinoza about the discovery, Mrs. De-Espinoza revealed critical information. After learning of these new facts, all of the previous case theory and legal strategy was eliminated. Additionally, upon further questioning of Mrs. De-Espinoza, I informed her that I could not let her testify under rules: MRPC 1.16(a); MRPC 1.16(b); and Md. Rule 2-132. In good faith, I informed Mrs. De-Espinoza that there were very little defense strategies available as we no longer had any witnesses and any of the evidence she provided me would be almost irrelevant and I told her that the options now were to either: plead guilty; or she could seek a new attorney.

Mr. Yi did not elaborate on the "critical information" that he said he had received from Ms. Portillo de Espinoza or explain how it changed his assessment of the case. Mr. Yi further stated that Ms. Portillo de Espinoza initially decided to seek new counsel, but ultimately decided to plead guilty pursuant to a plea agreement.

*Mr. Yi's Response to Bar Counsel Regarding the Refund Owed to the Client*

On June 12, 2018, Bar Counsel sent Mr. Yi a second letter requesting additional information, particularly regarding the disposition of the funds paid by Ms. Portillo de Espinoza and his advice to her about the immigration consequences of the guilty plea. In his response on June 21, Mr. Yi stated in part:

> Ms. Portillo de Espinoza's funds were held in the Law Offices of Gutierrez Yi IOLTA account. Funds were withdrawn periodically upon invoicing. $1000.00 still remains in the trust account, *Ms. Portillo de Espinoza has been unresponsive in attempts (1) to issue her balance* and (2) resolve her outstanding administrative and document translation fees.

18

(emphasis added).  He further stated that he had advised his client that her "best course of action" with respect to her immigration status was "a plea deal with a completely suspended sentence."

At the hearing in this case, Mr. Yi conceded that he did not mail a refund check to Ms. Portillo de Espinoza after she terminated his representation.  While he claimed to have asked a staff member to contact her about the refund, Mr. Yi could not remember who he had asked to do so, did not know if messages had been left for Ms. Portillo de Espinoza, and had no documentation of such an effort.  Mr. Yi testified that he thereafter forgot about her refund.  He admitted to having "made a mistake" in telling Bar Counsel that the refund was to be $1,000 instead of $3,000, as provided in the retainer agreement, and said he had been "careless in reading the retainer" agreement.[13]

The hearing judge found that Mr. Yi had knowingly and intentionally represented to Bar Counsel that "Ms. Portillo de Espinoza has been unresponsive in attempts to issue her balance," despite having no proof of the alleged attempts to contact Ms. Portillo de Espinoza and despite the fact that he did not provide a refund as required by his own retainer agreement.[14]

---

[13] Mr. Yi authorized his counsel in this case to make another attempt to deliver the refund to Ms. Portillo de Espinoza.  Mr. Yi testified that it was only at that point that he realized he actually owed a $3,000 refund under the retainer agreement.  He issued one check from his attorney trust account for $1,000 and one check from his operating account for $2,000.

[14] Mr. Yi excepts to the hearing judge's finding that he knowingly and intentionally represented to Bar Counsel that Ms. Portillo de Espinoza was unresponsive to his attempts to issue her a refund despite the fact that he had no tangible proof of his alleged attempts to contact Ms. Portillo de Espinoza.  Based on Mr. Yi's own testimony that he had little

*Mr. Yi's Response to Bar Counsel's Request for Documentation of Funds*

On September 6, 2018, Bar Counsel sent Mr. Yi a follow-up request for "any and all documentation related to the receipt and maintenance" of Ms. Portillo de Espinoza's fee payment, including deposit slip, client ledgers, disbursements, and bank statements for the period of July 1, 2016 through January 31, 2017. Bar Counsel requested the documentation no later than September 14. On September 24, having not received any response, Bar Counsel wrote to Mr. Yi again requesting the documentation, as well as an explanation for his failure to respond to the initial request.

In a letter dated September 25, Mr. Yi replied that he was "on sabbatical away from my firm" and provided some documentation related to the firm's attorney trust account. He further stated that a balance of $1,500 remained in the trust account for Ms. Portillo de Espinoza and that there was an unsettled charge of $500 for the translation of documents and evidence by an independent contractor. In fact, as of September 25, only $1,000 of Ms. Portillo de Espinoza's funds remained in Mr. Yi's attorney trust account.

At odds with the representation in the letter of an "unsettled charge," at the hearing of this case Mr. Yi testified that, in February 2017, he had made a $500 cash payment from Ms. Portillo de Espinoza's funds to his law partner's sister for her interpretation and translation services in the case. In addition, although Mr. Yi provided bank statements to Bar Counsel under cover of his September 25 letter, he failed to provide any of the other

_____

knowledge, and no documentation, of alleged attempts to contact Ms. Portillo de Espinoza, the hearing judge's finding is amply supported by the record. This exception is overruled.

requested documentation regarding the receipt and maintenance of Ms. Portillo de Espinoza's funds.  Accordingly, the hearing judge found that Mr. Yi's assertions in his September 25 letter were knowing and intentional misrepresentations.[15]

On September 28, Bar Counsel sent Mr. Yi another letter requesting, among other things, the details concerning his "sabbatical" and efforts to protect the interests of his clients during that time, further documentation concerning the receipt and maintenance of the funds received from Ms. Portillo de Espinoza, an explanation for accounting discrepancies in his previous responses to Bar Counsel, and copies of all communications between Mr. Yi and Ms. Gruenke.  Bar Counsel requested the information by October 10, 2018.  Mr. Yi did not respond to the letter.

*Management of the Client's Funds in Mr. Yi's Trust Account*

Six months later, on April 10, 2019, Mr. Yi, for the first time, provided Bar Counsel with copies of the deposit slip, cancelled checks, and client ledger associated with Ms. Portillo de Espinoza's funds.  As summarized by the hearing judge, that documentation revealed:

- On July 26, 2016, $8,000 was deposited into the firm's attorney trust account representing unearned attorneys' fees paid by Ms. Portillo de Espinoza.

---

[15] Mr. Yi excepts to the hearing judge's finding that he knowingly and intentionally misrepresented the balance in the trust account to be $1,500.  Although Mr. Yi concedes, as he must, that his statement to Bar Counsel was not true, he asserts that it was not intentional, but rather a careless and negligent result of his inexperience.  As previously indicated, the hearing judge was entitled to assess the credibility of Mr. Yi's testimony on this subject and draw appropriate inferences.  This exception is overruled.

- On August 29, 2016, Mr. Yi issued a check from his attorney trust account to the firm's operating account in the amount of $1,700, of which $1,000 was attributed to Ms. Portillo de Espinoza's funds.

- On September 12, 2016, Mr. Yi issued a check from his attorney trust account made payable to his sister in the amount of $75. Mr. Yi testified that he had asked his sister to conduct research related to Ms. Portillo de Espinoza's case, as she was a recent law school graduate and had access to LexisNexis and Westlaw, and the $75 payment was for that research. Mr. Yi never informed Ms. Portillo de Espinoza that he had hired his sister to conduct legal research for her case, nor that she was being charged separately for that expense.[16]

- On October 12, 2016, Mr. Yi issued a check from his attorney trust account to the firm's operating account in the amount of $3,600, of which $1,500 was attributed to Ms. Portillo de Espinoza's funds.

- On November 10, 2016, Mr. Yi issued a check from his attorney trust account to Mr. Gutierrez's sister in the amount of $80. According to Mr. Yi, this payment was for interpretation services that had been provided at the scheduling conference on September 30.

- On November 29, 2016, Mr. Yi issued a check from his attorney trust account to the firm's operating account in the amount of $4,500, of which $2,500 was attributed to Ms. Portillo de Espinoza's funds.

- On January 6, 2017, by which time Mr. Yi's representation of Ms. Portillo de Espinoza had ended, Mr. Yi still retained $2,845 of Ms. Portillo de Espinoza's funds in his attorney trust account.

- On February 1, 2017, Mr. Yi issued a check from his attorney trust account to the firm's operating account in the amount of $5,745, of which $1,845 was attributed to Ms. Portillo de Espinoza's funds. Mr. Yi paid $500 of the $1,845 to Mr. Gutierrez's sister for her services translating the letters and text messages. Mr. Yi did not inform Ms. Portillo de Espinoza of that payment.

---

[16] That expense presumably should have been covered by the payment of attorneys' fees. The hearing judge found that the charge was unreasonable. While Mr. Yi excepted to the hearing judge's findings that charges for translation and interpretation services were unreasonable, he has not excepted to this finding.

- At the hearing of this case, Mr. Yi testified that he still retained $1,000 of Ms. Portillo de Espinoza's funds in the firm's attorney trust account.

The hearing judge found that Mr. Yi had failed to provide any credible explanation for his failure to refund the $3,000 that he owed to Ms. Portillo de Espinoza under the retainer agreement. Mr. Yi conceded that, according to his own retainer agreement, he was entitled to only $5,000 in attorneys' fees. The hearing judge explained that, even if one accepted the $655 disbursed to the sisters of the firm's lawyers for translation and legal research services as legitimate expenses for which Ms. Portillo de Espinoza was responsible, Mr. Yi was only authorized to disburse $5,655 of Ms. Portillo de Espinoza's funds from his attorney trust account. However, he had admittedly disbursed $7,000 of her funds from the trust account. The hearing judge found that Mr. Yi knowingly and intentionally misappropriated $1,345 of Ms. Portillo de Espinoza's funds when he transferred $1,845 to the firm's operating account on February 1, 2017.

The hearing judge also found that the record keeping of Mr. Yi's attorney trust account was inadequate. In the hearing judge's words, Mr. Yi's client ledger consisted of a "Microsoft Excel spreadsheet containing an indecipherable recitation of names, dates, and numbers accompanied by little or no description of the individual transactions" and failed "to clearly identify the client or matter, transaction dates, the payor or payee, or the means or methods by which the trust funds were received, disbursed, or transferred." At the hearing, Mr. Yi conceded that, in retrospect, his representation of Ms. Portillo de Espinoza was "inadequate" and that his firm's financial records were "very mismanaged."

## II

### Violations of the Rules of Professional Conduct

The hearing judge concluded that Mr. Yi had committed all of the violations pursued by the Commission.  Mr. Yi excepts to those conclusions.  Taking into consideration Mr. Yi's arguments, we review the hearing judge's conclusions de novo.  Maryland Rule 19-741(b)(1).

*Failing to Meet Basic Standards*

As is the case with anyone providing a service, a lawyer must be competent (Rule 1.1) and diligent (Rule 1.3).  As in any professional relationship, a lawyer must communicate adequately with the client concerning the representation (Rule 1.4) and abide by direction received from the client (Rule 1.2(a)).  We agree with the hearing judge that Mr. Yi violated these rules.

Rule 1.1 states that "[c]ompetent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation."  Rule 1.3 requires that the lawyer act with "reasonable diligence and promptness."  As the hearing judge noted, an attorney does not provide competent and diligent representation if the attorney does not properly examine discovery materials or adequately prepare a client and communicate viable options to that client in advance of trial.  *See Attorney Grievance Comm'n v. Ficker*, 399 Md. 445 (2007).  Moreover, an attorney violates Rule 1.1 if the attorney mishandles client trust account funds and fails to maintain adequate records of the account.  *See Attorney Grievance Comm'n v. Bell*, 432 Md. 542, 552 (2013).

In this case, the hearing judge found that Mr. Yi violated Rules 1.1 and 1.3 in his representation of Ms. Portillo de Espinoza when he (1) failed to review the State's evidence and witnesses with his client; (2) failed to propound any discovery on his client's behalf; (3) failed to file any motions; (4) failed to calculate his client's sentencing guidelines prior to advising her of her potential sentence; (5) failed to meaningfully investigate his client's mental health circumstances; (6) failed to advise his client of the potential immigration consequences of entering a guilty plea; (7) failed to place any terms of the purported plea offer on the record during the plea hearing; and (8) failed to safeguard his client's funds. Moreover, the hearing judge noted that Mr. Yi admitted that his representation of Ms. Portillo de Espinoza was "inadequate."

Mr. Yi excepts to the hearing judge's conclusion that he violated Rules 1.1 and 1.3. The crux of Mr. Yi's argument is that he was an inexperienced lawyer, who had been a member of the bar for less than three years at the time he represented Ms. Portillo de Espinoza, and that he was particularly inexperienced in criminal defense. In some respects, this argument simply proves the violation. A competent attorney recognizes the limits of his or her expertise and does not put the client at risk in venturing beyond it.

Mr. Yi also argues that he initially believed that Ms. Portillo de Espinoza had a viable defense of duress, but once he received initial discovery from the State and met with Ms. Portillo de Espinoza to discuss her case, he concluded that she was lying to him about her involvement in the events that led to her arrest. Mr. Yi felt that, because he could not let Ms. Portillo de Espinoza commit perjury, he could not represent his client at trial – in his view, he could only represent his client for a plea or withdraw from the representation.

25

In addition, Mr. Yi contends that the hearing judge erred in concluding that he did not review *any* of the State's evidence with Ms. Portillo de Espinoza, as he reviewed the text messages with her.

It may be true that Mr. Yi discussed the text messages with his client, but he fell short of competent representation in several other ways, as the hearing judge found, most egregiously failing to discuss the potential immigration consequences of the guilty plea, failing to assess the potential sentence by consulting the sentencing guidelines, failing to follow up on the investigation of his client's mental health, failing to place the terms of the plea offer on the record, and failing to safeguard his client's funds, among other things.[17] There is clear and convincing evidence that Mr. Yi violated Rules 1.1 and 1.3.

Rule 1.4 establishes baseline standards that attorneys must meet in communicating with clients. The rule states:

> (a) An attorney shall:
>
> (1) promptly inform the client of any decision or circumstance with respect to which the client's informed consent, as defined in Rule [1.0(f)], is required by these Rules;
>
> (2) keep the client reasonably informed about the status of the matter;

---

[17] The hearing judge also faulted Mr. Yi for failing to file mandatory pretrial motions under Maryland Rule 4-252 and failing to propound discovery requests to the State. There is no requirement that a defense attorney take such actions in every case to be deemed competent. Indeed, a form motion filed under Rule 4-252 without a basis in the particular case may be meaningless. *See Tunnell v. State*, 466 Md. 565, 576 n.9 (2020). However, a competent defense attorney will carefully consider whether such a motion or a discovery request is appropriate in a case – something that Mr. Yi failed to do in Ms. Portillo de Espinoza's case. For example, in this case, the fact that the State had obtained evidence from Ms. Portillo de Espinoza's cell phone raised potential Fourth Amendment issues. *See Riley v. California*, 573 U.S. 373 (2014); *Sinclair v. State*, 444 Md. 16 (2015).

>    (3) promptly comply with reasonable requests for information; and
>    . . .
>    (b)  An attorney shall explain a matter to the extent reasonably necessary
>    to permit the client to make informed decisions regarding the
>    representation.

Rule 1.2(a) specifically addresses communications concerning the scope of an attorney's representation of a client.  It provides:

>    (a)  [A]n attorney shall abide by a client's decisions concerning the objectives
>    of the representation and, when appropriate, shall consult with the client as
>    to the means by which they are to be pursued.  An attorney may take such
>    action on behalf of the client as is impliedly authorized to carry out the
>    representation.  An attorney shall abide by a client's decision whether to
>    settle a matter.  In a criminal case, the attorney shall abide by the client's
>    decision, after consultation with the attorney, as to a plea to be entered,
>    whether to waive jury trial and whether the client will testify.

The hearing judge found that Mr. Yi violated Rule 1.4(a) and (b) in his representation of Ms. Portillo de Espinoza noting, among other things, that he failed to ensure that the retainer agreement had been properly explained to his client, failed to advise his client of the plea offer from the State, and failed to advise his client of the potential immigration consequences of a guilty plea.  The hearing judge concluded that Mr. Yi violated Rule 1.2(a) for the same reasons as Rules 1.1 and 1.4.

Regarding Rule 1.2(a), Mr. Yi argues that he abided by Ms. Portillo de Espinoza's objectives in planning a defense of duress until he received discovery from the State.  Mr. Yi further argues that, as soon as he determined that he could not represent Ms. Portillo de Espinoza at trial, he immediately informed her of that decision.  At that point, according to Mr. Yi, he no longer believed that Ms. Portillo de Espinoza was being truthful with him, and he told her that he could either withdraw or he could continue to represent her if she

27

pled guilty.  Mr. Yi denies that he told Ms. Portillo de Espinoza that she could flee the state or return to Guatemala.

Much of Mr. Yi's argument boils down to disagreement with the hearing judge's findings of fact and her decision to credit Ms. Portillo de Espinoza's version of their critical meeting over Mr. Yi's version.  As explained above, the hearing judge was entitled to credit the testimony of Ms. Portillo de Espinoza over the testimony of Mr. Yi.  Beyond his abandonment of the duress defense, Mr. Yi violated Rules 1.2(a) and 1.4 by failing to advise Ms. Portillo de Espinoza of the potential immigration consequences of entering a guilty plea, and failing to fully communicate to her the State's plea offer or place its terms on the record during the plea hearing.  There is clear and convincing evidence that Mr. Yi violated Rules 1.2(a) and 1.4.

*Mishandling Money Matters*

An attorney's fees must be reasonable, and reasonably communicated to the client. In addition, an attorney must be scrupulous in handling funds that belong to others, especially those to whom the attorney has a fiduciary obligation, such as a client.

Rule 1.5(a) provides that "[a]n attorney shall not make an agreement for, charge, or collect an unreasonable fee or an unreasonable amount for expenses" and elaborates on factors that determine the reasonableness of a fee.  Rule 1.5(b) provides that the "scope of the representation and the basis or rate of the fee and expenses for which the client will be responsible shall be communicated to the client, preferably in writing, before or within a reasonable time after commencing the representation" and that "[a]ny changes in the basis or rate of the fee or expenses shall also be communicated to the client."

Rule 1.16(d) requires an attorney to refund any unearned fee to the client upon termination of representation.[18]  Rule 8.5(b) is a choice of law rule that applies Rule 1.15(b) and (c) of the Virginia Rules of Professional Conduct concerning the safekeeping of client property to Mr. Yi's management of his trust account and related records that his firm maintained in Virginia.  Under that rule, Mr. Yi's firm was required to maintain accurate records concerning its trust account and to promptly deliver to a client funds to which the client is entitled.

We agree with the hearing judge that Mr. Yi violated these rules.

A fee that is reasonable at the outset of a representation can become unreasonable if the lawyer fails to earn it.  *See Attorney Grievance Comm'n v. Garrett*, 427 Md. 209, 224 (2012) (fee became unreasonable due to attorney's neglect of the matter and abandonment of the representation); *Attorney Grievance Comm'n v. Guida*, 391 Md. 33, 51-53 (2006) (fee became unreasonable when attorney did virtually no work).  As the hearing judge found, Mr. Yi violated Rule 1.5(b) when he failed to ensure that the terms of the retainer agreement were adequately explained to Ms. Portillo de Espinoza.  The fee of $8,000 collected by Mr. Yi's firm at that time was not unreasonable.  However, the $5,000 in fees that were ultimately owed under the terms of the retainer agreement became unreasonable when Mr. Yi failed to perform any legal services of value for Ms. Portillo de Espinoza.  In

---

[18] That rule requires that, upon termination of representation of a client, an attorney "shall take steps to the extent reasonably practicable to protect a client's interests."  Such steps include "giving reasonable notice to the client, allowing time for employment of another attorney, surrendering papers and property to which the client is entitled and refunding any advance payment of fee or expense that has not been earned or incurred."

addition, as the hearing judge also found, the $75 charged for legal research by Mr. Yi's sister, in addition to the attorneys' fees, was also unreasonable.[19]

As the hearing judge found, Mr. Yi violated Rule 1.16(d) when he failed to provide Ms. Portillo de Espinoza with a refund of the unearned portion of the fee pursuant to the terms of his own retainer agreement. Moreover, he misappropriated $1,345 of Ms. Portillo de Espinoza's funds when he included that sum in a check transferring funds to his firm's operating account in February 2017. That same conduct – the failure to provide a refund and the misappropriation of funds remaining in the trust account – also violated Virginia Rule 1.15(b) and (c) pertaining to the safekeeping of client property. As Mr. Yi himself admitted at the hearing, the records of the trust account were "very mismanaged." There is clear and convincing evidence that Mr. Yi violated Rules 1.5 and 1.16(d), as well as Virginia Rules 1.15(b) and (c).

*Misrepresentations to Bar Counsel*

An essential element of the regulation of the legal profession is the requirement that an attorney cooperate truthfully with an investigation by Bar Counsel. Rule 8.1 provides in part that, in connection with a disciplinary matter, a lawyer is not to "knowingly make a false statement of material fact" or "fail to disclose a fact necessary to correct a misapprehension…or knowingly fail to respond to a lawful demand for information from

---

[19] The hearing judge also concluded that certain translation and research expenses charged to the client were unreasonable. As indicated in footnotes 6 and 7 above, we sustain Mr. Yi's exception to those findings.

[a]…disciplinary authority."  We agree with the hearing judge that Mr. Yi violated Rule 8.1 pertaining to disciplinary matters.

Mr. Yi violated Rule 8.1 when he knowingly misrepresented material facts in response to Bar Counsel's requests for information.  Specifically, on June 21, 2018 in his response to Bar Counsel, Mr. Yi blamed Ms. Portillo de Espinoza for being "unresponsive" to attempts to issue her refund when he had no specific knowledge about any efforts of his staff to reach her and he had, as he later admitted, forgotten about the matter.  Moreover, his representation to Bar Counsel on September 25, 2018, that he maintained a balance of $1,500 of Ms. Portillo de Espinoza's funds in his attorney trust account and that she had an unsettled charge of $500 was disproved by his own records.  There is clear and convincing evidence of a violation of Rule 8.1.

*Dishonesty*

Trustworthiness in a lawyer is essential.  Rule 8.4(c) prohibits a lawyer from engaging in "conduct involving dishonesty, fraud, deceit or misrepresentation."  We agree with the hearing judge that Mr. Yi's conduct violated this rule.

This Court has held that misappropriation of client funds is an act of deceit and dishonesty that violates Rule 8.4(c).  *See Attorney Grievance Comm'n v. Somerville*, 379 Md. 586, 593 (2004).  Mr. Yi violated Rule 8.4(c) when he knowingly misappropriated $1,345 of Ms. Portillo de Espinoza's funds and failed to provide her with the refund to which she was entitled.  In addition, Mr. Yi violated Rule 8.4(c) when he misrepresented

material facts, as outlined above, in his responses to Bar Counsel's requests for information.[20]

*General Violations*

Finally, we address two general rules, one of which is easy to apply but that adds nothing to the discussion, the other of which is broadly and vaguely phrased but often goes to the heart of the misconduct.  Under Rule 8.4(a), an attorney who violates any of the disciplinary rules also violates that rule.  Under Rule 8.4(d), an attorney who engages in conduct "prejudicial to the administration of justice" commits misconduct.  We agree with the hearing judge that Mr. Yi violated these rules, but discuss only Rule 8.4(d).

As summarized by the hearing judge, Mr. Yi failed to serve as an advocate for his client and failed to protect her rights.  He did not meet the bare minimum expected of defense counsel in a criminal case.  Without reviewing the State's evidence in detail with his client and without making a sufficient effort to formulate a defense, Mr. Yi pressured Ms. Portillo de Espinoza to plead guilty to a crime that she did not believe she had committed, exposing her to potentially severe criminal and immigration sanctions.  This conduct was prejudicial to the administration of criminal justice in the Circuit Court.  There is clear and convincing evidence that this conduct violated Rule 8.4(d).

---

[20] Mr. Yi argues that the misappropriation and misrepresentations were the product of inexperience and carelessness, but not purposeful.  However, as indicated previously, we accept the hearing judge's findings based on her credibility determinations.

# III

## Sanction

Bar Counsel recommends disbarment of Mr. Yi.   Mr. Yi has suggested that a reprimand with a requirement that he secure a mentor (at his own expense) to monitor his practice of law for at least a year would be a more appropriate sanction.

A sanction in an attorney discipline case is selected primarily with a purpose to protect the public and deter future misconduct rather than to punish the respondent attorney.   *Attorney Grievance Comm'n v. Woolery*, 456 Md. 483, 497-98 (2017).   The public is best "protected when sanctions are imposed that are commensurate with the nature and gravity of the violations and the intent with which they were committed."   *Attorney Grievance Comm'n v. Awuah*, 374 Md. 505, 526 (2003) (citation omitted).   In tailoring the sanction to the facts of the particular case, we consider any aggravating and mitigating factors.   The American Bar Association has developed a list of such factors, which we typically consult.   *See Attorney Grievance Comm'n v. Blatt*, 463 Md. 679, 707-8 n.19 (2019) (listing aggravating and mitigating factors).

*The Seriousness of the Violations*

At the core of this case is Mr. Yi's failure to provide competent and diligent representation in a case with potentially devastating consequences to the client, his mishandling of client funds, and his lackadaisical and misleading responses to Bar Counsel. Mr. Yi had put his client on the road to conviction, likely imprisonment, and deportation, in a case with a viable defense.   Even if Mr. Yi's errors in the defense of Ms. Portillo de

33

Espinoza could have been later rectified, as the Circuit Court predicted, through a postconviction proceeding, that would hardly negate the misconduct.

Misuse of client funds is equally serious misconduct. *See Attorney Grievance Comm'n v. Pattison*, 292 Md. 599, 609 (1982). The "[m]isappropriation of funds by an attorney is an act infected with deceit and dishonesty and ordinarily will result in disbarment in the absence of compelling extenuating circumstances justifying a lesser sanction." *Attorney Grievance Comm'n v. Zimmerman*, 428 Md. 119, 144 (2012) (citation omitted).

Failure to respond truthfully to Bar Counsel's inquiries threatens the integrity of the attorney disciplinary process. Material misrepresentations to Bar Counsel can be a basis for disbarment. *Attorney Grievance Comm'n v. Smith*, 425 Md. 230, 236-37 (2012).

*Aggravating and Mitigating Factors*

Aggravating and mitigating factors are not a scorecard of merits and demerits to be toted up and offset against one another. Rather, they are a checklist of factors that may overlap several violations and that relate to the gravity of those violations. They can be critical in the selection of an appropriate sanction in the particular case from the menu of options in the rules.

In this case, the hearing judge found eight aggravating factors. On the record of this case, there can be no doubt that Ms. Portillo de Espinoza, as an immigrant facing serious criminal charges, was a *vulnerable victim* of Mr. Yi's violations and that Mr. Yi demonstrated an *indifference to making restitution.* It is also fair to say that, although Mr. Yi essentially admitted to responsibility for some of the violations in terms of carelessness,

34

inattention, and mismanagement, there was also on his behalf a *refusal to acknowledge the wrongful nature of some of the conduct at issue*.  One can also reasonably conclude, as the hearing judge did, that Mr. Yi committed *multiple offenses* and demonstrated a *pattern of misconduct*.  However, those factors can be discounted in this case as all of the violations, and the resultant pattern, are based on one case and a single client relationship.

Mr. Yi excepts to the hearing judge's findings of a *dishonest or selfish motive*, and *bad faith obstruction of the disciplinary proceeding*, and in light of the latter exception, implicitly to the finding of *submission of false evidence and false statements*.  These factors, which concern the motive or intent with which the violations were committed, are the most important of the aggravating factors to the choice of sanction.  We, of course, cannot read Mr. Yi's mind, but only the cold record.  We must rely on the findings of the hearing judge, who heard the testimony and observed the witnesses, unless that record shows the hearing judge's findings to be clearly erroneous.  That is not the case here, where the carelessness or negligence that Mr. Yi claims as the root cause of the violations inures to his financial benefit and to the detriment of Bar Counsel's investigation.  We overrule these exceptions.

With respect to mitigating factors, the hearing judge found four factors in Mr. Yi's favor:  (1) he has *no prior disciplinary record*; (2) he was *relatively inexperienced in the practice of law* at the time of the misconduct; (3) as a result of this case, he has made *"interim rehabilitative efforts to improve practices and procedures in his office"*; and (4) he has an otherwise *good reputation in the community*.  Although there is relatively little evidence in the record on the latter two factors, we accept all of these findings.

35

*Conclusion*

Mr. Yi essentially argues that all of his alleged violations stem from a "rookie mistake" – his failure to either consider another defense in Ms. Portillo de Espinoza's case or withdraw as counsel and refer her to a more experienced criminal defense attorney.  He asserts that his mistakes in managing Ms. Portillo de Espinoza's funds are the product of carelessness and negligence, not intentional dishonesty.

In our view, inexperience alone cannot excuse Mr. Yi's conduct in this case.  What is more, we have no basis for concluding that the hearing judge was clearly erroneous in making the various credibility determinations with respect to the testimony of Mr. Yi and Ms. Portillo de Espinoza that led the hearing judge to find that Mr. Yi demonstrated a dishonest and selfish motive in misappropriating his client's funds, as well as bad faith obstruction of the disciplinary proceedings.

Accordingly, the appropriate sanction in this case is disbarment.

**IT IS SO ORDERED.  RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT, INCLUDING COSTS OF ALL TRANSCRIPTS PURSUANT TO MARYLAND RULE 19-709(D), FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION OF MARYLAND AGAINST JOHN XANDER YI.**